IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

NOV 1 8 2014

PER _____
DEPUTY CLERK

WILLIAM TIERNO,              :

    Petitioner              :

       v.              :              3:13-CV-02862

             :

DISTRICT ATTORNEY OF              :              (Judge Nealon)
LUZERNE COUNTY, P.A., et al.,              :

    Respondents              :

## MEMORANDUM

Petitioner William Tierno has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He attacks a conviction and sentence imposed by the Court of Common Pleas for Wyoming County, Pennsylvania pursuant to a plea agreement. (Doc. 1). For the reasons set forth below, the petition will be denied.

## I.   Background

On March 18, 2011, Tierno pled guilty to one count of robbery and two counts of conspiracy to commit robbery. (Doc. 18, Attachment 4, p. 1d). Prior to pleading guilty, Tierno had filed a motion to suppress statements made to a "Trooper Surmick" during interrogation. (Doc. 19, Attachment 2, p. 25b). In his motion, Tierno argued that Trooper Surmick had promised that any sentence received for the aforementioned crimes could run concurrent to any penalty imposed by the Pennsylvania Board of Probation and Parole ("Board of

Probation"). (Id.). Tierno argued that, because any penalty imposed by the Board of Probation must run consecutive to any other sentence, Trooper Surmick's representation was incorrect. (Id. at p. 25b-26b).

Thereafter, in return for pleading guilty, the charges against Tierno were amended from felony in the first degree to felony in the third degree. (Doc. 19, Attachment 3, p. 36c). Additionally, Tierno was sentenced to the minimum standard range sentence on each count, and all sentences were ordered to be served concurrently with each other and with any other sentence that Tierno was then serving. Id.

At his sentencing, testimony was elicited from Tierno to ascertain whether his plea was given voluntarily and knowingly. (Doc. 18, Attachment 2, p. 1b-11b). While the prosecution and Tierno were initially unable to reach a plea agreement, during the plea hearing the prosecution agreed to have all sentences run concurrently, whereupon the following colloquy occurred:

> THE DEFENDANT: You want to take the plea, Your Honor? You want to take the plea that they recommend that all sentences run concurrent to my State back time? I'll enter that right now, if that's what you want to do. You enter a sentence that they run all the sentences concurrent with my state back time on the time I'm serving right now under FZ 1544 and I'll enter a plea right now before this Court to every case there.
>
> . . .
>
> MR. SANGUEDOLCE: Both sentences to run concurrent to any sentence Defendant is now serving.

2

THE DEFENDANT: Under FZ 1544?

MR. SANGUEDOLCE: That's concurrent. Anything you're currently serving.

THE DEFENDANT: That's the agreement. I'll take that. If that's the agreement, I'm willing to enter right now today and get this over with.

(Id. at p. 5b). Later in the colloquy, the Judge asked:

THE COURT: Were you on probation or parole at the time of these offenses?

THE DEFENDANT: Yeah. I was out on parole, yes.

THE COURT: Do you understand that by entering a guilty plea today, you would be in violation of that probation or parole and whoever placed you on probation or parole --

THE DEFENDANT: Yes. Yes, I do.

THE COURT: -- they could revoke that and re-sentence? Do you understand that?

THE DEFENDANT: Yes. I understand that, yes.

Id.

Tierno filed a Post Conviction Relief Act ("PCRA") petition on July 14, 2011, challenging, inter alia, the effectiveness of his counsel in advising him to plead guilty when the sentences could not run concurrent with back time ordered by the Board of Probation. (Doc. 18, Attachment 3, p. 31c). A hearing was held on February 13, 2012 by the PCRA Court. (Doc. 18, Attachment 2, p. 16b-31b). At that hearing, Tierno testified that the guilty plea was intended to ensure that all

3

sentence were served concurrently with the sentence he was then serving for "state back time." (Id. at 17b).  Tierno stated that he agreed to plead guilty only under those specific terms, and it was his understanding that the sentences would run concurrent with his state back time. (Id. at 17b-18b).  He discovered several months later that the sentences could not legally run concurrently. (Id. at 18b).

After Tierno testified, his attorney during the plea bargaining process, Edward Olexa, ("counsel") was called to testify. (Id. at 19b).  Counsel testified that he was not aware at the time of sentencing that Tierno was serving back time – all discussions relating to parole penalties were "in contemplation of a future hit being imposed against the sentence[.]" (Id. at 20b).  Counsel stated:

> . . . I had gone over the Felony I, Felony II, and Felony III presumptive ranges from state parole from, I believe, Title 42 -- if he was convicted of the various gradings, here's what he would be looking at.

> I believe that he understood those penalties could not run concurrent under any circumstances because he would not plead to the Felony I's for that reason because the hit was going to be greater on a Felony I than a Felony III. And I believe he understood that they could not be run concurrent.

> What we did not discuss -- I don't believe -- is what effect that would have on the back time sentence that he was already serving. The discussions we had were discussions as to what the hit would be in the future, not being aware that he was serving back time . . . I told him what the ranges of those hits would be, and I told him that they, in my opinion, could not run concurrent, that they would have to run consecutive . . . I never certainly told him that they could run concurrent because I know they can't.

4

Id. Counsel further testified:

> My belief is that he believed that state parole was going to run the
> sentences concurrent. I don't doubt his assertion that he did believe
> that those sentences were going to run concurrent. I had informed him
> at the time that I could tell him based on what I knew that I believed
> that the sentences would run concurrent to the matters that he had in
> Schuylkill County and in Northumberland County, not being aware
> that there was a back time issue there, just thinking that they were
> straight sentences that he was serving without back time and that I
> could not guarantee him that any hit that he received going forward
> was going to run concurrent.
>
> In fact, I told him that it was my belief that those would run
> consecutive. I think he then told me that he disagreed with me, and he
> believed that the parole board may run those concurrent. And I think I
> clarified that that's not part of the agreement as I understood it.
>
> The agreement as I understood it was that they were going to run
> concurrent to any sentence he was currently serving but that there
> were no promises, essentially, being made with regard to any hits he
> received in the future.

(Id. at 20b-21b).  Counsel reiterated during cross-examination that "there was no

doubt in my mind that he understood that a future hit would run consecutive or else

he would have just taken the original offer when it was an F-1. The reason he

didn't is because he knew that there was going to be a hit imposed consecutively."

(Id. at 24b).  Counsel also stated again that he believed Tierno understood that "at

no time could a state parole hit run concurrent with any other sentence" that would

be imposed by the Court.  (Id. at 26b).

On June 27, 2012, Tierno's PCRA petition was dismissed on the merits.

(Doc. 18, Attachment 3, pp. 30c-37c).  The PCRA Court found that, as a result of

the plea agreement, Tierno received several benefits: (1) the charges were reduced from first degree felonies to third degree felonies, (2) he was sentenced to the minimum standard range for each count, and (3) all sentences were ordered to be served concurrent with each other and with any sentence Tierno was then serving. (Id. at 36c).

The PCRA Court also found that Tierno "clearly indicated his understanding that his parole could be revoked and that he could be resentenced based upon his guilty pleas in this matter." (Id. at 37c). Consequently, the Court concluded that there was no basis for Tierno's claim of ineffective assistance of counsel. Id.

On July 16, 2013, the Pennsylvania Superior Court dismissed Tierno's appeal on procedural grounds, concluding that he was no longer in custody pursuant to the plea agreement and therefore was ineligible for PCRA relief. (Doc. 18, Attachment 4, pp. 1d-5d). On November 25, 2013, Tierno filed a petition for writ of habeas corpus before this Court. (Doc. 1). Tierno raises a single ground for relief: his trial counsel was constitutionally ineffective. Id.

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Tierno that he could either have the petition ruled on as filed but lose his ability to file a second or successive petition, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the

6

Antiterrorism Effective Death Penalty Act ("AEDPA").  (Doc. 5).  On December 30, 2013, Tierno returned the notice of election, indicating that he wished to proceed with his petition for writ of habeas corpus as filed.  (Doc. 7).  On February 6, 2014, Respondents filed a response to Tierno's habeas petition.  (Doc. 18).  Tierno filed a traverse on April 17, 2014.  (Doc. 23).

## II.   Discussion

Respondents argue that the habeas petition should be dismissed as moot because he is no longer in custody.  (Doc. 18).  In the alternative, Respondents assert that his petition should be denied on its merits because his counsel was effective.  Id.  Tierno contends that his petition is not moot due to the "collateral consequences" rule, and further argues that his counsel was ineffective for failing to advise him that parole sentences could not run concurrently with his robbery sentence.

### A.   Tierno's Petition is Not Moot

To bring a petition for writ of habeas corpus under 28 U.S.C. § 2254, a petitioner must be "in custody" pursuant to the conviction under attack in the habeas proceeding.  28 U.S.C. § 2254 (a).  For the purposes of 28 U.S.C. § 2254, the "in custody" determination is made as of the time the petition is filed.  Carafas v. LaCallee, 391 U.S. 234, 238 (1968).  The "in custody" requirement has been liberally construed in the context of habeas petitions, Obado v. New Jersey, 328

7

F.2d 716, 717 (3d Cir. 2003), but where a petitioner is no longer suffering from

any restraint resulting from an expired conviction, he or she is not in custody.

Maleng v. Cook, 490 U.S. 488, 492 (1989).

A petitioner need not be physically detained to be in custody; rather, the

petitioner need only suffer, or be threatened with, "an actual injury traceable to the

[respondent] and likely to be redressed by a favorable judicial decision." Lewis v.

Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  Consequently, where the petitioner

has completed his sentence, but the fact of that sentence "might affect [the

petitioner's] release date" for a different sentence that he or she is currently

serving, the petitioner remains "in custody" and the petition is not moot. DeFoy v.

McCullough, 393 F.3d 439, 442 (3d Cir. 2005).

Here, Tierno completed his sentence pursuant to the plea agreement on

October 29, 2011.  (Doc. 18, Attachment 4, p. 5d).  However, both parties agree

that, as a result of this conviction, the Board of Probation re-calculated his

maximum sentence, resulting in a roughly one-year extension of that sentence. See

(Docs. 18, 23).  The sentence instituted under the plea agreement and the sentence

instituted by the Board of Probation could not be served concurrently.  (Id.).

Consequently, although Tierno had completed his plea sentence as of the date he

filed his habeas petition, that sentence had the effect of extending the consecutive

sentence imposed by the Board of Probation. Therefore Tierno remains "in custody" for the purposes of 28 U.S.C. § 2254. See DeFoy, 393 F.3d at 442.

**B.    Tierno's Trial Counsel was Not Ineffective**

Respondents argue that AEDPA deference is due to the PCRA Court's decision as it was a decision on the merits. (Doc. 18). Respondents further assert that Tierno's counsel was not ineffective. Id. In response, Tierno argues that AEDPA deference does not apply because there was no adjudication on the merits, and further contends that counsel was ineffective. (Docs. 2, 23).

1. *AEDPA Deference is Not Due to the State Court Decision*

Under the AEDPA, "federal courts are to review a state court's determinations on the merits only to ascertain whether the state court reached a decision that was 'contrary to' or involved an 'unreasonable application' of clearly established Supreme Court law, or if a decision was based on an 'unreasonable determination' of the facts in light of the evidence presented." Fahy v. Horn, 516 F.3d 169, 189 n.20 (3d Cir. 2008) (citing 28 U.S.C. § 2254(d)).

However, where a state court has not reached a decision based upon the merits of a claim, the deferential standards of the AEDPA do not apply and the federal court "must conduct a de novo review over pure legal questions and mixed questions of law and fact[.]" Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). In these circumstances, "the state court's factual determinations are still presumed to

be correct, rebuttable upon a showing of clear and convincing evidence." Id. (citing 28 U.S.C. § 2254(e)(1)). Where a PCRA court reaches a determination on the merits, but a state appellate court affirms on purely procedural grounds, the PCRA court's substantive determination is stripped of its preclusive effect, and there has been "no 'adjudication on the merits'" for AEDPA purposes. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009) (citations omitted).

Here, the PCRA Court reached a decision based upon the merits of Tierno's case. See (Doc. 18, Attachment 3, pp. 30c-37c). However, the Pennsylvania Superior Court dismissed Tierno's petition based solely on procedural grounds, finding that he was no longer "in custody" and therefore was ineligible for PCRA relief. See (Doc. 18, Attachment 4, pp. 1d-5d). The decision of the Pennsylvania Superior Court "stripped the PCRA court's substantive determination . . . of preclusive effect" and, consequently, there was no adjudication on the merits of Tierno's claim. Thomas, 570 F.3d at 115. Claims of ineffective assistance of counsel present a mixed question of law and fact. Berryman v. Morton, 100 F.3d 1089, 1095 (3d Cir. 1996). Accordingly, Tierno's petition must be reviewed de novo. Appel, 250 F.3d at 210.

   2. *Tierno has Failed to Meet the Standard Announced in Hill v. Lockhart*

   A petitioner asserting a claim of ineffective assistance of counsel in the context of plea negotiations must establish that: (1) his or her attorney's

"representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012) (quoting Hill v. Lockhart, 474 U.S. 52 (1985)).

    a. Performance

    Under the first prong of the test, a petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland v. Washington, 466 U.S. 668, 688 (1984). There is a strong presumption that counsel rendered adequate assistance to the petitioner, and judicial scrutiny "of counsel's performance must be highly deferential." Id. at 689.

    Here, counsel's representation did not fall below an objective standard of reasonableness. First, the plea agreement that was reached was exceedingly favorable to Tierno. The plea agreement resulted in a reduction of the charges from felonies in the first degree to felonies in the third degree, resulting in a substantial reduction in the potential time of incarceration that Tierno faced for each sentence.[1] (Doc. 18, Attachment 3, p. 36c). Furthermore, the plea agreement ordered that all sentences relating to the three (3) charges be run concurrently

---

[1] The maximum sentence for a felony in the first degree is twenty (20) years, while the maximum sentence for a felony in the third degree is seven (7) years. See 101 Pa. Code § 15.66 (b).

rather than consecutively, thereby reducing Tierno's maximum potential sentence by another fourteen (14) years. Id. The trail court also sentenced Tierno to the minimal standard range for each count, further reducing the sentence by five (5) years. Id. Thus, it strains credulity to believe that counsel was ineffective for negotiating a plea deal that reduced a potential prison sentence by fifty-eight (58) years.

Second, counsel did inform Tierno of the potential impact that the plea would have on any back time sentence. At the PCRA hearing, counsel testified that he had discussed the potential impact that the plea would have on any back-time Tierno would need to serve. (Doc. 18, Attachment 2, p. 19b-26b). Counsel repeatedly emphasized to Tierno that any sentence imposed by the Board of Probation could not run concurrent with the sentences he would receive in his plea agreement. Id. The PCRA Court found that Tierno "clearly indicated his understanding that his parole could be revoked and that he could be resentenced based upon his guilty plea in this matter." (Doc. 18, Attachment 3, p. 37c). Tierno has not presented clear and convincing evidence that the PCRA Court's finding of fact in this regard was in error, and it will be accepted as true. Appel, 250 F.3d at 210.

Consequently, Tierno has not presented sufficient evidence to overcome the presumption that his counsel's conduct fell within the wide range of reasonable

12

professional assistance. Tierno received substantial benefits as a result of the plea agreement, was adequately informed of the consequences of the plea agreement, and chose willingly to proceed under the terms of that agreement.

b. Prejudice

Although Tierno's claims may be disposed of under the first prong of the test, his claim also fails under the second prong because he did not suffer any prejudice as a result of counsel's alleged errors. Tierno argues that the sole inducement which convinced him to plead guilty rather than proceed to trial was the promise that all sentences, including any state back time sentence, would run concurrently rather than consecutively. (Doc. 2). Tierno argues that, had he known his sentences could not be served concurrent with his back time sentence, he would not have pleaded guilty. Id. However, the evidence of record establishes that Tierno understood the sentences could not be served concurrently prior to pleading guilty.

At the PCRA hearing, counsel testified that he had several conversations with Tierno prior to the guilty plea, and discussed the fact that future back time sentences could not be served concurrent with other sentences. (Doc. 18, Attachment 2, p. 20b-21b). Counsel further testified that he had "no doubt" that Tierno understood any future back time sentence would run consecutively, otherwise Tierno would have simply pled guilty to the felony one charges. (Id. at

24b).  Counsel stated that he believed Tierno understood that "at no time could a state parole hit run concurrent with any other sentence" that would be imposed by the Court.  (Id. at 26b).

Additionally, at sentencing the Court made clear that Tierno might face additional time and re-sentencing for any parole or probation violation that would occur as a result of the sentence.  (Doc. 18, Attachment 2 p. 5b).  Tierno stated without equivocation that he understood this fact.  Id.

Finally, the motion filed on Tierno's behalf prior to his sentencing hearing demonstrates his knowledge that back time sentences could not run concurrent with any other sentence.  Prior to reaching a plea agreement, counsel filed a motion to suppress statements made to Trooper Surmick during interrogation.  (Doc. 19, Attachment 2, p. 25b).  In that motion, counsel argued that Trooper Surmick promised that any sentence he received for the aforementioned crimes could run concurrent to any back time sentence.  Id.  Counsel argued that because any penalty imposed by the Board of Probation must run consecutive to any other sentence, Trooper Surmick's representation was incorrect.  (Id. at p. 25b-26b).

Counsel testified at the PCRA hearing that Tierno insisted on receiving copies of all motions, (id. at 27b), and therefore would have been aware of the language contained within that motion.  Furthermore, counsel testified that Tierno brought Trooper Surmick's promise to his attention and, due to the promise of

14

concurrent sentences, Tierno "believed that Trooper Surmick had violated his rights in their plea negotiations." Id.

Consequently, it is clear from the record that Tierno understood, prior to entering into the plea agreement, that any back time sentence could not be served concurrent with any other sentence imposed.  Thus, there is little probability that, "but for counsel's [alleged] errors, [Tierno] would not have pleaded guilty and would have insisted on going to trial." Lafler, 132 S.Ct. at 1384-85.  In sum, counsel's conduct did not fall below an objective standard of reasonableness, and any alleged errors committed by counsel did not prejudice Tierno.  As a result, Tierno's petition for a writ of habeas corpus must be denied.

## IV.   Conclusion

A review of the record reveals that Tierno has not sustained his burden of proving that counsel was constitutionally ineffective, and therefore the petition for writ of habeas corpus will be denied.  An appropriate order will be issued.

Dated:  November 18, 2014                    **United States District Judge**